UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

WILLIAM M. GUSTAVSON, et al.,         Civil Action No. 1:13-cv-717

    Plaintiff,                                  Dlott, C.J.
                                                Bowman, M.J

vs.

CITY OF CINCINNATI, *et al.*,

    Defendants.

**REPORT AND RECOMMENDATION**

Plaintiff, William Gustavson, a former attorney for the City of Cincinnati, initiated this *pro se* action asserting that his retirement pension was unlawfully calculated. The complaint names as defendants, the City of Cincinnati, Board of Trustees of the Cincinnati Retirement System, Christopher Meyer, Mike Fehn, Bill Partridge, Donn Beets, Mark Berliant, Sally Cuni, Bev Nussman, Mike Rachford, Susan Robinson, Roger Sims, and Tom West, trustees of the Board of Trustees of the Cincinnati Retirement System and Milton Dohoney, Jr. and Paula Tilsley, collectively referred to as the "City Defendants." Other former city employees were originally named as defendants but were later realigned as Plaintiffs in this case.[1] (*See* Doc. 38). This matter is now before the Court on Plaintiff Gustavson's motion for summary judgment, Plaintiff Stroop's motion for partial summary judgment (Doc. 41), and Defendant City of Cincinnati's motion for judgment on the pleadings. (Doc. 40). Oral argument on the parties pending motions was held on December 18, 2014.

---

[1] These plaintiffs include: Michael Beirman, Francis Wolgin, John Diener, Davis Stroop, Linda Hayden, Asa Olusola, Beverly Tillman, and Michael Hope.

I.     **Background and Facts**[2]

The Cincinnati City Council established a Retirement System for employees of the City in 1931. See Section 203, Cincinnati Municipal Code ("CMC"). The Retirement System provides for a "service retirement allowance" (commonly known as a pension) that is the sum of an "annuity" — payments for life derived from the accumulated contributions of a member — and a "pension"— payments for life derived from the money provided by the employer. See CMC 203-1-S5; CMC 203-1-A1; CMC 203-1-P. From time to time, the manner by which this service retirement allowance is calculated has changed, as have the eligibility requirements for receiving service retirement allowance. In general, the service retirement allowance is calculated using: (1) the amount of the accumulated contributions and (2) the average highest compensation multiplied both by a percentage (often referred to as a "multiplier") and the number of years of service with the City. See CMC 203-33. A person becomes eligible to receive a service retirement allowance upon obtaining a certain amount of service along with reaching a certain age. If a person obtains the service amount but leaves service with the City before reaching a certain age (in this case 60), such person will still become eligible for benefits provided that the former employee left his accumulated contributions in the Retirement System. Id.

Plaintiff Gustavson began his employment with the City of Cincinnati in December 1978. In December 1995, Gustavson left his city employment after 17 years of service. At the time he left service, he had obtained the required service amount to

---

[2] The facts focus primarily on Plaintiff Gustavson. Although the other former city employees and realigned Plaintiffs may have different facts relating to dates of employment and amounts of their pensions, they are similarly situated as such that the Court's ruling on the material facts and legal issues in this matter will resolve their nearly identical claims.

2

receive benefits but was only 46 years old. Thus, he had no vested right to his retirement contributions. He did, however, elect to leave his contributions in the system thereby making him eligible to receive a City service retirement allowance upon reaching age 60. At the time he left the City, had he been 60 years old the benefit would have been calculated by taking the average of his highest 3 years of compensation times the 17 years of his service times a multiplier of 2% pursuant to the relevant City Ordinance in effect in 1995.

On January 14, 2009, Plaintiff Gustavson made an application to the retirement system of City of Cincinnati. (Doc. 36, Ex. A). Plaintiff Gustavson requested that the service allowance become effective on March 1, 2009 (he turned 60 years old on February 9, 2009). The City confirmed his request. (Doc. 36, Ex. G). Thereafter, on March 17, 2009, the Board of Trustees of the Cincinnati Retirement System sent a letter to Plaintiff Gustavson confirming the amount of his allowance in the amount of $2,518.26 per month, or approximately $30,216 per year, beginning on March 1, 2009. (Doc. 36, Ex. F). From March 1, 2009 through February 2013, Gustavson received the monthly allowance amount as outlined in the March 17, 2009 letter.

On February 25, 2013, the Cincinnati Retirement System (CRS) sent Plaintiff a letter stating that it "recently identified a small group of pensioners whose benefits were incorrectly calculated." (Doc. 36, Ex. G). This group included members who left City employment in the 1990's with a deferred vested benefit and began receiving a monthly pension[3] between 2008 through 2011. *Id.* Plaintiff was identified as one of those affected pensioners. The letter states, in relevant part:

The base pension benefit was calculated with an incorrect multiplier. As

---
[3] Pension and service retirement allowance (or allowance0 are used interchangeably by the parties.

3

> the time these members left employment, the multiplier was either 2.0% (applied for service through 4/2/1998), or 2.25% or 2.22% for active members who retired on or after 5/1/1999. Additional changes occurred on July 1, 2011. These changes did not impact the benefits of members who had already left active service. When the affected group of deferred vested members reached age 60 and became eligible to receive a pension benefit, the benefit was incorrectly calculated using a 2.5% multiplier.
>
> **The March 1, 2013 payment will reflect the amount that would have been payable on this date had the error never occurred. The corrected gross pension payment on March 1 is $2,253.76**. The CRS Board of Trustees has reviewed the issue and has approved a method of repayment. The total amount overpaid to each affected member will be deducted in equal installments from their monthly pension payment over a four year period.
>
> **The total amount overpaid will be divided into 48 equal payments and deducted from the monthly pension beginning with the April 13, 2013 payment. The total amount of your overpayment is $21,922.25. An amount of $456.71 will be deducted from your monthly pension payment beginning with April 1, 2013 payment and ending with the March 1, 2017 payment.**

(Doc. 36, Ex. G.)

According to the City Defendants, the miscalculation of benefits occurred because the Cincinnati Retirement System implemented a new pension administrative system that automated certain functions and calculations. (Doc. 44, Tinsley Aff. ¶¶12-14). When the parameters of the new pension system were set-up, the implementation team did not develop an automated method of calculating service retirement allowances using the lower multiplier of 2% and 2.25% that applied before the passage of Ordinance 130-1999, which raised the multiplier to 2.5%. *Id.* As a result, staff had to manually input the lower multiplier when calculating service retirement allowances for members who left City employment before the multiplier was increased and who became eligible to receive their service retirement allowance after the passage of

4

Ordinance 130-1999. *Id.* For the Plaintiffs, a staff member failed to manually input the alleged correct multiplier. *Id.* Eventually, Cincinnati Retirement System staff discovered and corrected the alleged mistake, and the Board of Trustees of the Cincinnati Retirement System decided to collect the overpayment made to Plaintiffs in equal installments over a period of 48 months. (Doc. 36, Ex. G).

In light of the foregoing, Plaintiff Gustavson filed the instant action against the City Defendants on October 13, 2012. (Doc. 1). Plaintiff later amended his complaint, and now asserts the following four causes of action: request for declaratory judgment, breach of contract, request for a mandatory injunction, and denial of procedural due process. For the reasons that follow, the undersigned finds that Plaintiff Gustavson's motion for summary judgment is well-taken and should be granted.[4]

**II. Plaintiffs' are entitled to judgment as a matter of law**

*A. Standard of review*

Summary judgment is proper "if the depositions, documents, electronically stored information, affidavits or declarations, stipulations ... admissions, interrogatory answers, or other materials" show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. On a motion for summary judgment, the movant has the burden of showing there exists no genuine issue of material fact, and the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Nevertheless, "the mere existence of *some* alleged factual dispute between

---

[4] Under the same analysis as set forth below, Plaintiff Stroop's motion for partial summary judgment (Doc. 41) should also be granted.

the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be "no *genuine* issue *of material* fact." *Anderson v. Liberty Lobby, Inc., 411* U.S. 242, 248 (1986) (emphasis in original).

      B. *Relevant Ordinances and Sections of the Cincinnati Municipal Code.*

At the time Gustavson left service with the City in December 1995, Ordinance 510-1992 described the calculation of the service retirement allowance in relevant part as:

> (1) an annuity which shall be the actuarial equivalent of the accumulated contributions of the member at the time of retirement or in the case of a member who retired after 5 years . . . at the time of reaching age 60; and
> (2) a pension which together with the annuity, shall be equal to **2 percent** of the average highest compensation multiplied by the number of years of membership service . . . .

(Doc. 40, Ex. A)

Thereafter, on April 14, 1999, the city passed Ordinance No. 130-1999, which repealed 510-1992 in its entirety and changed the multiplier used for the calculation of the service retirement allowance. Ordinance No. 130-1999 states in relevant part:

> [T]he service retirement allowance for members of the retirement system who retire effective May 1, 1999 or thereafter be based on **2.50%** of average highest base compensation times years of service that members of the retirement system hired prior to July 12, 1998 and who retire effective May 1, 1999 or thereafter, shall have until the earlier of their retirement or October 1, 1999, to make an irrevocable choice to have their service retirement allowance be based on 2.22% of average highest total compensation, including overtime and lump sum payments. . .

(Doc. 26, Ex. 1)(Emphasis added).

A new section of the CMC was added in Ordinance 130-1999, Section 203-34, which stated in relevant part "The service retirement allowance for members shall be determined in accordance with the provisions of this Chapter **in effect at the time the**

6

**member leaves service**." *Id.*(emphasis added). Section 203-34 of Ordinance 130-1999 furthered stated in relevant part: "Unless the member has elected the option formula for the computation of the service retirement allowance in accordance with Sec. 203-32, the service retirement allowance shall be equal to 2.50 percent of the average highest base compensation multiplied by the number of years of membership service; . . ." *Id.* Thus, unless an affirmative election was made by a member to use the 2.22% multiplier, the member, by default, elected a pension calculated with the 2.5% multiplier.

Notably, Section 4 of Ordinance 130-1999 provides that: "[t]he council declares this ordinance to be an emergency measure necessary for the public peace, health and safety which shall go into effect forthwith. The reason for the necessity of immediate effect is the need to allow active members of the Cincinnati Retirement System to plan their retirements with knowledge of the applicable provisions of the Cincinnati Municipal Code." (Doc. 26, Ex. 1).

Thereafter, in June 2000, the City passed Ordinance 264-2000. Section 4 of Ordinance 264-2000 repealed Sec. 203-34 of the Cincinnati Municipal Code, which contained the language "[t]he service retirement allowance for members shall be determined in accordance with the provision of the Chapter **in effect at the time the member leaves service**." (Doc. 26, Ex. 2)(emphasis added). No similar language has since been reinstated.[5]

On November 19, 2008, the City enacted Ordinance No. 379-2008. This Ordinance included an amendment to section 203-33 of the Cincinnati Municipal Code entitled "Service Retirement Allowance; Vesting." (Doc. 26, Ex. 3). Pursuant to this

---

[5] The parties seem to agree that had Plaintiffs retired between the enactment of 130-1999 and the repeal of section 203-34 that the Plaintiffs' proper multiplier would have been 2%.

7

amendment, a member of the retirement system was "entitled" to a service retirement allowance upon reaching 60 years of age provided the member left his/her entire accumulated contributions in the retirement system. Again, Plaintiffs have done this. In addition, Section 203-33(b) of the Cincinnati Municipal Code, as amended by Ordinance No. 379-2008, provided that the service retirement allowance set out in subsection (c) of section 203-33 applied to persons who were hired prior to July 12, 1999, and who, in accordance with Ordinance No. 130-1999 elected by October 1, 1999, to be provided benefits under the formula outlined in Section 203-33 of the Cincinnati Municipal code using the 2.5% multiplier.

*C. Plaintiffs are entitled to the 2.5% multiplier*

Under this framework, Plaintiffs' maintain that the City Defendants breached their contract with Plaintiffs by reducing their pensions. Notably, at the time Gustavson left City service, the relevant City ordinance indicated that a pension should be calculated using a 2% multiplier. However, that ordinance was amended in 1999, and a 2.5% multiplier was substituted. Thus, in February 2009, when Plaintiff' reached age 60 and his pension became vested, Ordinance 130-1999 mandated a 2.5% multiplier when calculating pension benefits.

The City Defendants, however, contend that they acted properly when correcting the alleged error in the calculation of the Plaintiffs' service retirement allowance because the correct multiplier to apply is the one in place when the Plaintiffs left City service, not when they reached age 60 and began receiving the benefit. Defendants' assert that Plaintiffs' improperly focus on when their benefits vested, instead of whether the 2.5% multiplier ever applied to them in the first place. As such, Defendants further

8

assert that Chapter 203 and the ordinances that modified it, establish that the 2.5% multiplier does not apply to Plaintiffs.

In this regard, the City notes that Ordinance 510-1992 includes the version of CMC 203-33 that was in effect until April 2, 1998, which includes the time period during which Plaintiff Gustavson left service with the City. (Doc. 25, ¶ 8). Ordinance 510-1992 describes the calculation of the service retirement allowance in relevant part as (1) an annuity which shall be the actuarial equivalent of the accumulated contributions of the member at the time of retirement or in the case of a member who retired after 5 years . . . at the time of reaching age 60; and (2) a pension which together with the annuity, shall be equal to 2 percent of the average highest compensation multiplied by the number of years of membership service . . . . (Doc. 40, Ex. A). This provision remained unaltered until the passage of Ordinance 130-1999, which repealed the prior multiplier. As noted above, Plaintiffs allege that they made the election offered in Ordinance 130-1999 to have a 2.5% multiplier by not affirmatively electing the 2.2%. (Doc. 25 at ¶ 14). The City contends, however, that Plaintiffs could not have made the election outlined in Ordinance 130-1999 because it was not offered to people in their situation, but rather only to people still in service with the City at the time of its passage. They argue that the Plaintiffs were entitled to a deferred vested benefit. However, the term "deferred vested benefit" is not defined by the Cincinnati Municipal Code. Nor does the CMC or any City Ordinance state that individuals with a deferred vested benefit should have their pensions calculated using a 2% multiplier or the multiplier in effect at the time he or she left service as that language was repealed in 2000 and not in effect at the time Plaintiffs left City employment.

9

Upon careful review of the relevant ordinances and sections of the City's Municipal Code, the undersigned finds that the City's contentions are not well-taken. As such, the undersigned finds that Plaintiff Gustavson, and all others similarly situated, should be entitled to the 2.5% multiplier to calculate their pension benefits based on the language of Ordinance 130-1999 and sections 203-33 and 203-33(b) of the Cincinnati Municipal Code.

As noted above, at the time Plaintiff was employed by the City, Ordinance 510-1992 outlined the calculation of the service retirement allowance using a 2% multiplier. Ordinance 77-1998, another pension related ordinance also in effect during Plaintiff's employment with the City, refers to "employees" when talking about the election of a pension multiplier. However, when the City passed Ordinance 130-1999, it also enacted Sec. 203-32 of the Cincinnati Municipal Code, which omitted the term "employees," and replaced it with "member" of the retirement system. Thus, Sec. 203-32 stated that members of the retirement system had the right to make the election of the 2.5% multiplier. Furthermore, Sec. 203-1-E of the CMC states: "'Employee' shall mean any officer, agent, servant or employee of the city, not elected, but shall not include officers and employees who receive no salary. Sec. 203-1-M1 states "'Member' shall mean any person included in the membership of the retirement system as provided in Section 203-3." Section 203-3 states: "Effective July 1, 1991, all employees of the city of Cincinnati . . . shall be members of the retirement system . . .".

As noted by Gustavson, he was an employee of the City of Cincinnati on July 1, 1991 and therefore became a "member" of the retirement system at that time. As a member of the retirement system, Plaintiffs are therefore entitled to the 2.5% multiplier

10

outlined in Ordinance 130-1999.  The City Defendants also contend that Gustavson and the other former city employees were not "active members" of the retirement system and therefore not entitled to the higher multiplier.  This argument is also not supported by the language of the Cincinnati Municipal Code.  The term "active member" is not contained in the definitional section of Chapter 203.  As such, the undersigned agrees that Gustavson and other similarly-situated former city employees were active members of the Cincinnati Retirement System by virtue of having left their pension contributions in the retirement system.

      The City also asserts that any ambiguity should be resolved to be consistent with the intent of the ordinances and the interpretation of the Board of Trustees.  The City notes that if a statute is ambiguous, a court may look to a variety of factors to glean the intent of the legislature.  In making this determination, an Ohio court may consider the following: (1) the object sought to be obtained; (2) the circumstances under which the statute was enacted; (3) the legislative history; (4) the common law or former statutory provisions, including laws upon the same or similar subjects; (5) the consequences of a particular construction; and (6) the administrative construction of the statute.  *Hughes v. White,* 388 F. Supp.2d 805, 818 (S.D. Ohio 2005) (describing the process for determining the Ohio General Assembly's intent); OHIO REV. CODE 1.49.

      In this regard, the City contends that City Council intended the 2.5% multiplier to apply to current City employees only and not to be applied retroactively.  As noted by the City Defendants, the minutes from the Board of Trustees in January 1998, around the time of the passage of Ordinances 77-1998 and 130-1999, discuss a motion to submit an ordinance to Council offering a "new pension formula" "as an irrevocable

11

option to all current employees." (Doc. 44, Tilsley Aff. Ex. A, 2-3). After Ordinance 130-1999 was passed in 1999, a brochure explaining the new multiplier option was sent out with paychecks of current employees. The brochure described the changed as a "benefit improvement" and "all currently active and future members of the City of Cincinnati Retirement System can take advantage of…" (Doc. 44, Tilsley Aff. Ex. F). The brochure further stated that the improvements were made to "attract and retain loyal career employees. *Id.* Additionally, the minutes from October 7, 1999, included a report about the deadline for choosing the option listed in Ordinance 130-1999, therein stated that the "choice will appear on employee's paychecks in a couple of weeks." (Doc. 44, Tilsley Aff, Ex. D).

The Court agrees that this could support that the intent of the City and City Council in 1999 was to only apply the higher multiplier to members still employed by the City. However, the very next year, City Council repealed the very language – and only clear language anywhere – that set forth that former city employees get the multiplier in effect at the time they left service. Had that language never been repealed this would be a very different case. The repeal of section 203-34 negates the City's intent argument as it appears to this Court their intent in 1999 changed in 2000.

Furthermore, as noted above, at the time of their applications for retirements, Plaintiffs were "members" of the retirement system as defined by the Cincinnati Municipal Code. The minutes and informational brochures indicated that the new multiplier was to apply to members of the retirement system.

More importantly, "[a]mbiguous statutory provisions [in pension statutes] must be construed liberally in favor of the interests of public employees and their dependents

12

that the pension statutes were designed to protect." *State ex rel. Solomon v. Police & Firemen's Disability & Pension Fund Bd. of Trustees* (1995), 72 Ohio St.3d 62, 65, 647 N.E.2d 486; *State ex rel. Teamsters Local Union 377 v. Youngstown* (1977), 50 Ohio St.2d 200, 205, 4 O.O.3d 387, 364 N.E.2d 18. Thus, to the extent Ordinance 130-1999 is ambiguous; it should be construed in favor of Plaintiffs.

*D. Procedural Due Process*

Plaintiff Gustavson also asserts that the City's actions violated his constitutional right to procedural due process. Specifically, Plaintiff contends that he and other former city employees had a vested property interest in their pensions as established by procedures outlined in City Ordinances and the Municipal Code that could not be unilateral reduced.

The Due Process Clause of the Fourteenth Amendment provides that no state "shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1. "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus,* 435 U.S. 247, 259 (1978). To establish a procedural due process claim pursuant to § 1983, plaintiffs must establish three elements: (1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, (2) that they were deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest. *See Zinermon v. Burch*, 494 U.S. 113, 125–26 (1990).

While the Due Process Clause dictates what process is due before a right may be deprived, the actual property interest is created by independent sources. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). The two most common sources are state law and contracts. *Id.* To establish a protected interest, Plaintiff "must be able to point to some statutory or contractual right conferred by the state which supports a legitimate claim to continued employment," or in the present case, benefits. *Bailey v. Floyd Cnty. Bd. of Educ.,* 106 F.3d 135, 141 (6th Cir.1997).

The City contends that CMC 203-33 did not grant Plaintiffs a multiplier of 2.5% because the option offered by Ordinance 130-1999 did not apply to them. As such, the City asserts that Plaintiffs cannot demonstrate that they had a property right recognized by the Due Process clause of the 14th Amendment. However, for the reasons stated above, the undersigned finds that Plaintiffs are entitled to the 2.5% multiplier pursuant to section 203-33 of Ordinance 130-1999. As such, Plaintiffs' had a vested property right to their pensions using the 2.5% multiplier and were deprived of that vested interest by the City.

In light of the foregoing, the undersigned finds that Plaintiffs are entitled to judgment as a matter of law on their claims for breach of contract and for violations of their procedural due process rights.

### III. Conclusion

For these reasons, **IT IS THEREFORE RECOMMENDED THAT** Plaintiffs motions for summary judgment on liability (Docs. 39, 41) should be **GRANTED,** and the City's motion for judgment on the pleadings (Doc. 40) should be **DENIED**. **IT IS FURTHER RECOMMENDED THAT** this matter should be set for a hearing on

damages, if necessary, within **thirty days** of the District Judge's ruling on this Report and Recommendation.

                                                    */s Stephanie K. Bowman*
                                                   Stephanie K. Bowman
                                                   United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| WILLIAM M. GUSTAVSON, et al., | Civil Action No. 1:13-cv-717 |
|     Plaintiff, | Dlott, C.J. |
| vs. | Bowman, M.J |
| CITY OF CINCINNATI, *et al.*, | |
|     Defendants. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).